UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| CHRISTINE C., | ) |
| | ) |
|        *Plaintiff* | ) |
| | ) |
| v. | )   No. 2:19-cv-00266-GZS |
| | ) |
| ANDREW M. SAUL, | ) |
| *Commissioner of Social Security,*[1] | ) |
| | ) |
|        *Defendant* | ) |

### REPORT AND RECOMMENDED DECISION[2]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge ("ALJ") supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks remand on the bases that the ALJ erred in failing to recognize her fibromyalgia as a medically determinable impairment and in relying on the opinions of two agency nonexamining consultants in assessing her mental residual functional capacity ("RFC") while ignoring their incongruous sub-finding of a marked limitation in her ability to carry out very short and simple instructions. *See* Plaintiff's Itemized Statement of Errors ("Statement of Errors") (ECF No. 13) at 4-12. I find no reversible error and, accordingly, recommend that the court affirm the commissioner's decision.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Andrew M. Saul is substituted as the defendant in this matter.
[2] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

1

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through September 30, 2011, Finding 1, Record at 18; that she had the severe impairments of spine disorder, personality disorder, anxiety disorder, and depression, Finding 3, *id.* at 19; that she had the RFC to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c) except that, in an eight-hour workday, she could perform simple, routine tasks for two-hour blocks of time during the course of a normal work schedule, could never work with the public, could adapt to routine changes in the work environment, and could make basic work-related decisions, Finding 5, *id.* at 21; that, considering her age (33 years old, defined as a younger individual, on her alleged disability onset date, July 1, 2008), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that she could perform, Findings 7-10, *id.* at 27; and that she, therefore, had not been disabled from July 1, 2008, her alleged onset date of disability, through the date of the decision, September 26, 2018, Finding 11, *id.* at 28.  The Appeals Council declined to review the decision, *id.* at 1-4, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence.  42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).  In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support

the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Sec'y of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

### A. Failure to Find Fibromyalgia a Medically Determinable Impairment

The plaintiff contends that the ALJ erred in failing to find a medically determinable impairment of fibromyalgia pursuant to the 1990 American College of Rheumatology ("ACR") Criteria for Classification of Fibromyalgia (the "1990 Criteria"), one of two sets of criteria that the commissioner recognizes may be used in establishing such an impairment. *See* Statement of Errors at 6-9; Social Security Ruling 12-2p ("SSR 12-2p"), reprinted in *West's Social Security Reporting Service* Rulings (Supp. 2019), at 460-62.

The 1990 Criteria require a showing of (i) "[a] history of widespread pain – that is, pain in all quadrants of the body . . . that has persisted (or that persisted) for at least 3 months[,]" (ii) "[a]t least 11 positive tender points on physical examination . . . found bilaterally (on the left and right sides of the body) and both above and below the waist[,]" and (iii) "[e]vidence that other disorders that could cause the symptoms or signs were excluded." SSR 12-2p at 460-61.

The ALJ determined that the plaintiff's alleged fibromyalgia was not a medically determinable impairment because (i) fibromyalgia had "not been diagnosed by an acceptable medical source based upon appropriate laboratory and clinical findings[,]" (ii) the records did not

establish the existence of a medically determinable impairment of fibromyalgia pursuant to either set of applicable criteria, (iii) the plaintiff had "mainly indicated that she has pain localized to her neck and back," (iv) there was "no objective evidence that she has had persistent widespread pain in all quadrants for three months or more[,]" (v) "[c]onsultative examination notes show[ed] that no trigger points were identified[,]" and (vi) "other causes of the [plaintiff]'s reported symptoms" had "not been excluded, and indeed, she has a severe impairment of spine disorder." Record at 19-20 (citation omitted).

The plaintiff counters that (i) she did have a history of widespread pain, having presented to the emergency room for treatment of an acute fibromyalgia flare on May 6, 2015, and having complained on September 7, 2017, of "'severe, daily sharp neck and back pain and total body muscle pain x 7 yrs[,]'" Statement of Errors at 6-7 (quoting Record at 707), (ii) a physical examination on September 7, 2017, documented 18 bilateral tender points, *see id*. at 7 (citing Record at 709), and (iii) tests for Anti-Nuclear Antibodies, Lyme disease, and C-Reactive Protein were negative in October 2017, *see id*. (citing Record at 746, 748). At oral argument, her counsel also pointed to evidence of treatment for fibromyalgia in 2015. *See* Record at 629-38.

The plaintiff contends that the ALJ erred in relying on an October 2014 examination by an agency examining consultant that revealed no trigger points while ignoring the September 2017 finding on physical examination by treating source Gerald Lachance, D.O., of 18 trigger points. *See* Statement of Errors at 7 (citing, *inter alia*, *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951), and *Peak v. Colvin*, No. 2:15-cv-67-JHR, 2015 WL 7681256, at *5 (D. Me. 2015), for the proposition that "it is axiomatic that an ALJ may never ignore evidence that is inconsistent with her decision"). She contends that the error is not harmless because Dr. Lachance, the only physician to recognize a diagnosis of fibromyalgia, assessed functional limitations that a

vocational expert testified would have precluded work, and the ALJ wrongly discounted the Lachance opinion based on a misunderstanding of fibromyalgia. *See id*. at 8-9.

Nonetheless, as the commissioner asserts, *see* Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 15) at 2-7, any error in ignoring Dr. Lachance's notation of a finding of 18 trigger points is harmless for at least two independent reasons: that the ALJ supportably determined that (i) fibromyalgia had "not been diagnosed by an acceptable medical source based upon appropriate laboratory testing and clinical findings[,]" Record at 19, and (ii) the plaintiff had failed to demonstrate a history of widespread pain for three months or more pursuant to the 1990 Criteria, *see id*.

SSR 12-2p provides, in relevant part: "We will find that a person has an MDI [medically determinable impairment] of FM [fibromyalgia] if the physician diagnosed FM and provides the evidence we describe in section II.A. [the 1990 Criteria] or section II.B. [the 2010 ACR Preliminary Diagnostic Criteria]." SSR 12-2p at 459-60. While Dr. Lachance noted 18 trigger points in September 2017 and conducted testing in October 2017 that ruled out other causes, he did not diagnose fibromyalgia on either of those occasions. *See id*. at 709-11, 749-52. Nor did he do so in April 2018. *See id*. at 744 (assessing neck pain). As the commissioner notes, *see* Opposition at 4, in similar circumstances, this court upheld an ALJ's finding that fibromyalgia was not a medically determinable impairment, *see James D. P. v. Saul*, No. 2:18-cv-00250-JHR, 2019 WL 4784601, at *5 (D. Me. Sept. 30, 2019) ("While the plaintiff faults the ALJ for failing to note that Dr. Kaur ordered testing that ruled out other causes, he points to no follow-up note of Dr. Kaur interpreting the results or, more importantly, confirming the diagnosis of fibromyalgia based on ruling out other possible causes.") (internal citations omitted).

At oral argument, the plaintiff's counsel acknowledged that nothing in Dr. Lachance's treatment notes indicated a firm diagnosis of fibromyalgia. However, she distinguished *James D. P.* on two bases. First, she argued that Dr. Lachance supplied the missing link when, in response to a question asking him to "provide a diagnosis and a brief indication of what medical or clinical findings" supported his December 2017 assessment of the plaintiff's mental limitations, he wrote: "Fibromyalgia" and "Depression." Record at 738. Second, she contended that, while in *James D. P.*, the ALJ supportably relied on the opinion of an agency nonexamining consultant that there was no confirmation of fibromyalgia in accordance with SSR 12-2p, in this case, the ALJ could not rely on the opinions of agency nonexamining consultants Donald Trumbull, M.D., and Geoffrey Knisely, M.D., because they either did not have, or ignored, relevant evidence. She elaborated that, while both consultants noted a lack of laboratory work ruling out other causes, Dr. Trumbull did not have the benefit of review of October 2017 records documenting such laboratory work, and Dr. Knisely ignored them. *See id*. at 143, 162.

Nonetheless, as counsel for the commissioner persuasively countered, (i) Dr. Lachance's mention of a diagnosis of fibromyalgia as a basis for his December 2017 mental RFC assessment is insufficient to supply the requisite evidence of a diagnosis when his treatment notes themselves, did not formalize such a diagnosis as of April 2018, and (ii) the ALJ's reliance on the opinions of Drs. Trumbull and Knisely as additional support for a finding that there was no medically determinable impairment of fibromyalgia was not misplaced. While both consultants specifically noted the absence of laboratory results ruling out other causes, they both also broadly stated, as a threshold matter, that there was "no confirmation of [fibromyalgia] by ACR/CDC criteria or SSA/SSR 12-2p 'Evaluation of Fibromyalgia', standards." *Id*. at 142, 162. The plaintiff's counsel identified no evidence unseen by either consultant bearing on other relevant criteria or standards.

Second, and in any event, the ALJ supportably found that the plaintiff had failed to demonstrate a history of widespread pain for more than three months. As the commissioner observes, *see* Opposition at 3-4, even when the plaintiff presented to the emergency room in May 2015 with a "fibromyalgia flare," she had only diffuse tenderness to light touch on the upper shoulders, back, and neck, *see* Record at 681-82, and she did not report "total body muscle pain" until September 2017, *id*. at 707. Approximately seven months later, she reported pain only in the neck, right arm, and cervical and thoracic spine, thus again reporting pain only in the upper quadrant of her body. *See* Opposition at 4; Record at 743.

Thus, even assuming that the ALJ erred in ignoring Dr. Lachance's finding of 18 trigger points on examination in September 2017, the error is harmless, the ALJ having supportably found that the plaintiff failed to carry her burden of demonstrating that she had been diagnosed with fibromyalgia by a physician or had a history of widespread pain for at least three months.[3]

Remand, accordingly, is unwarranted on the basis of this point of error.

### B.  Reliance on Agency Nonexamining Consultants' Mental RFC Assessments

In assessing the plaintiff's mental RFC, the ALJ gave great weight to the opinions of agency nonexamining consultants Lewis F. Lester, Ph.D., and Howard Goldberg, Ph.D., which she deemed "supported by the [plaintiff]'s mental status examinations overall, showing that [she] consistently presents as alert and cooperative, and her memory, concentration, and judgment are all within normal limits[,]" as well as by activities of daily living that included watching television, reading, and managing her finances. Record at 25.

---

[3] This obviates the need to reach the plaintiff's argument that the ALJ's error in failing to find a medically determinable impairment of fibromyalgia was harmful because she rejected disabling limitations assessed by Dr. Lachance based on a misunderstanding of fibromyalgia. *See* Statement of Errors at 8. In any event, as the commissioner notes, *see* Opposition at 5, Dr. Lachance did not attribute his assessed physical limitations to fibromyalgia, *see* Record at 740.

The plaintiff contends that this reliance was misplaced because, in assessing moderate limitations in concentration, persistence, or pace, Dr. Lester deemed her ability to carry out very short and simple instructions markedly limited but then, incongruously, found in his mental RFC opinion that she was capable of understanding and remembering simple and moderately detailed tasks and procedures and being reliable and completing two-hour blocks at simple tasks at a consistent pace within a normal schedule.  *See* Statement of Errors at 10; Record at 144-45.  She notes that, on reconsideration, Dr. Goldberg affirmed the Lester assessment in all respects.  *See* Statement of Errors at 10; Record at 163-64.  She contends that "[t]he ALJ's failure to acknowledge, let alone resolve, the dissonance within the opinions is cause for remand." Statement of Errors at 10-11.

Nonetheless, as the commissioner observes, *see* Opposition at 8, and the plaintiff's counsel acknowledged at oral argument, "an agency nonexamining consultant's RFC assessment is contained in the narrative portion summarizing his sub-findings," *Allison P. v. Berryhill*, No. 2:18-cv-00061-JHR, 2019 WL 1373646, at *4 (D. Me. Mar. 24, 2019); *see also, e.g., Michael H. v. Soc. Sec. Admin. Comm'r*, 2:17-cv-00447-JAW, 2018 WL 4179317, at *3 n.1 (D. Me. Aug. 31, 2018) (rec. dec., *aff'd* Feb. 15, 2019) ("The finding of a 'marked' limitation is not a residual functional capacity assessment.").

At oral argument, the plaintiff's counsel distinguished two cases on which the commissioner relied, *Allison P*. and *Hayes v. Astrue*, No. 2:10-cv-42-DBH, 2010 WL 5348757 (D. Me. Dec. 20, 2010) (rec. dec., *aff'd* Jan. 18, 2011), *see* Opposition at 8, on the basis that the sub-findings at issue were not necessarily inconsistent with the consultants' mental RFC assessments, *see Allison P*., 2019 WL 1373646, at *4 (asserted contradiction between consultant's sub-finding of marked limitation in carrying out detailed instructions and ALJ's RFC assessment of ability to

8

carry out detailed but uninvolved instructions); *Hayes*, 2010 WL 5348757, at *2 (asserted contradiction between moderate limitation in concentration, persistence, or pace and ability to carry out unskilled tasks).

Yet, in *Allison P.*, the court observed as a threshold matter that the plaintiff had wrongly focused on an asserted clash between the consultant's sub-finding and the ALJ's mental RFC assessment rather than on whether the consultant's mental RFC assessment was consistent with that of the ALJ. *See Allison P.*, 2019 WL 1373646, at *4. The court made the same observation in *Hayes*:

> The plaintiff, in effect, complains that the [ALJ] erred in failing to posit to the vocational expert a PRTF [psychiatric review technique form] finding. That was not error. For purposes of a Step 5 finding, as the [ALJ] recognized, she was obliged to convey to the vocational expert an accurate portrayal of the plaintiff's mental RFC.

*Hayes*, 2010 WL 5348757, at *3.[4]

In her statement of errors, the plaintiff also cites *Parker v. Colvin*, No. 1:15-cv-00446-JHR, 2016 WL 4994997, at *7 (D. Me. Sept. 19, 2016), for the proposition that remand was warranted when an ALJ failed either to include, or to explain the omission of, limitations assessed by agency nonexamining consultants on whose opinions he relied. *See* Statement of Errors at 10. In *Parker*, the court did observe that there was "a tension between Dr. Stahl's finding, in rating the plaintiff's social interaction limitations, that she was moderately limited in her ability to accept instructions and respond appropriately to criticism from supervisors, and the absence of any corresponding limitation in his RFC opinion[,]" observing that "[t]he absence of any explanation for the seeming discrepancy between the individual rating and the RFC narrative tends to call Dr. Stahl's RFC

---

[4] A "PRTF finding" is the same thing as a "sub-finding." *Hayes*, 2010 WL 5348757, at *3 ("PRTF stage" entails analysis of the severity of a mental impairment based on rating the degree of limitation in four broad functional areas; if an impairment is severe but does not meet or equal one of the so-called "Listings," a mental RFC assessment is required).

opinion into doubt[,]" *Parker*, 2016 WL 4994997, at *5.

However, the court did not hold that remand was independently warranted on that basis but, rather, on the basis of several collective errors, including the ALJ's errors in characterizing the opinions of two agency nonexamining consultants as consistent with each other and in purporting to give the mental RFC opinion of one consultant significant weight but ignoring his finding therein that the plaintiff would do better in employment that limited interactions. *See id*. at *4-7.

In any event, as the commissioner notes, *see* Opposition at 9, while Dr. Lester did not recognize any internal inconsistency between the sub-finding at issue and his mental RFC opinion, in a section of the form seeking his assessment of the consistency of the plaintiff's allegations with the evidence of record as a whole, he underscored his finding that the plaintiff was capable of simple work, suggesting that his mental RFC opinion, rather than the sub-finding at issue, accurately reflects his opinion:

> [The plaintiff] states that she has a "hard time" with focus and concentration, but has fully intact mental status and is able to carry out all normal adult ADL [activities of daily living] functions. She states that her anxiety is "really bad", but this is NOT reflected in medical evidence (e.g., CMMF 9/7/17). [The plaintiff's] mental limitations do NOT preclude her capacity to carry out tasks within the scope of the MRFC [mental RFC].

Record at 142 (emphasis in original).

Beyond this, as the commissioner observes, *see* Opposition at 9, and his counsel emphasized at oral argument, the ALJ identified additional evidence of record in support of her finding that the plaintiff retained the capacity to perform simple work, observing that mental status examinations showed that she was alert and cooperative with normal memory, concentration, and judgment, *see* Record at 25, and that her activities, including driving, shopping, preparing meals, reading, and managing her finances, were consistent with a limitation to simple, routine tasks, *see*

*id*. at 24-25. The ALJ also separately deemed "generally persuasive" the report of agency examining consultant Donna Gates, Ph.D., who found, *inter alia*, that the plaintiff "could manage a mild level of work-related stress and function independently on simple tasks." *Id*. at 25 (citation omitted).

The ALJ's determination that the plaintiff retained the capacity to perform simple, repetitive tasks, accordingly, is supported by substantial evidence. That, in turn, obviates the need to consider the plaintiff's final argument: that, to the extent that the ALJ's reliance on the Lester and Goldberg opinions was misplaced, her partial reliance on the Gates opinion did not, standing alone, fill the gap of supplying substantial evidence in support of her mental RFC finding. *See* Statement of Errors at 11-12.

## II.  Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 7th day of June, 2020.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge